**PORTLAND FEMINIST WOMEN'S HEALTH CENTER, an Oregon nonprofit corporation; Leila Whittemore; Geri Craig; Amy Aycrigg; and Jane Does Nos. 1 through 3; Plaintiffs,**

**v.**

**ADVOCATES FOR LIFE, INC., an Oregon nonprofit corporation; Priscilla Martin; Don Ayers; Fred Ritcherson; George Knezevich; Alice Buhler; Andrew Burnett; Kathy McNassar aka Kathy Stewart; Kathleen Walsh; Alta Austin; Shirley Barnard; Brian Clowes; Dan Muir; Christians in Action, an unincorporated association; and John Does Nos. 1 through 100; Defendants.**

**Civ. No. 86–559–FR.**

United States District Court,
D. Oregon.

July 28, 1988.

Stephen S. Walters and Barbara L. Nay, Stoel, Rives, Boley, Jones & Grey, Portland, Or., for plaintiffs.

Henry Kane, Beaverton, Or., for designated defendants.

William D. Bailey, Portland, Or., for George Knezevich.

Terrance L. McCauley, Estacada, Or., for defendant Alice Buhler.

Joseph Wetzel, Wetzel & DeFrang, Portland, Or., for Kathleen Walsh and Kathy Stewart.

## OPINION

FRYE, District Judge:

The matters before the court are the motions of Designated Defendants to dismiss the first and second claims of the amended complaint and to compel identification of the Doe plaintiffs.

## FACTS

Plaintiffs, Portland Feminist Women's Health Center (the Health Center) and certain directors, employees, and clients of the Health Center—Leila Whittemore, Geri Craig, Amy Aycrigg, and Jane Does Nos 1 through 3—filed this action in the Circuit Court of the State of Oregon for Multnomah County against defendants Advocates for Life, Inc., Christians in Action, and twelve individuals, all of whom are opposed to abortion. Plaintiffs alleged that defendants agreed and conspired among themselves to undertake actions designed to disrupt, harass, and otherwise harm the Health Center's business and property, to inflict extreme emotional distress on the individual plaintiffs and others, and to prevent the individual plaintiffs from exercising their constitutional rights to choose safe and legal abortions. These actions were alleged to have been undertaken in violation of 42 U.S.C. Sections 1985(3) and 1986, as well as various provisions of state law. Removal to this court on the basis of federal question jurisdiction was without objection.

This court dismissed the federal claims in plaintiffs' original complaint on the ground that state involvement in the conspiracy had not been pleaded. *Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 681 F.Supp. 688 (D.Or.1988). However, the court exercised its discretion to retain jurisdiction over the pendent state law claims.

The plaintiffs timely filed an amended complaint, alleging that the Health Center's patients come to the Health Center from states throughout the Pacific Northwest to obtain health services including abortion, and furthermore that:

15. Defendants have agreed and conspired among themselves and with others to disrupt, harass, and otherwise harm persons who provide or wish to obtain abortions, including the Health Center and the individual plaintiffs. Defendants' avowed intention is to destroy the business and property of such persons, to inflict extreme emotional distress on such persons, to prevent such persons from exercising their constitutional rights to travel and to choose safe and legal abortion, and to influence state and local officials to deny such persons' con-

stitutional rights. Plaintiffs are victims of that conspiracy.

....

20. The actions [of defendants] have deterred and continue to deter patients and others from coming to the Health Center from Oregon and from other states.

....

25. Defendants' actions are motivated by animus toward a class of women who exercise their right to choose abortion, and toward women generally. Plaintiffs have been injured in their persons and property as a result of defendants' conspiracy.

....

26. An object of defendants' conspiracy is to deny those persons who are members of the classes described in paragraph 25 their constitutional right to travel, and to influence state and local officials to deny those persons their constitutional right to privacy in matters of procreational freedom.

Amended Complaint at 5, 10, & 14. Designated Defendants now move to dismiss the Section 1985(3) and 1986 claims from the amended complaint.

The issues before the court are:

1. Whether plaintiffs' allegation that the conspiracy implicates the right of plaintiffs to travel and seeks to influence state officials to deny plaintiffs their right of privacy are sufficient to state a claim under Section 1985(3);

2. Whether Section 1985(3) protects a class composed of "women who exercise their right to choose abortion."

3. Whether plaintiffs' allegation that defendants' actions are motivated by an animus toward women in general states a claim under Section 1985(3).

## APPLICABLE STANDARD

The court should dismiss a complaint for failure to state a claim only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### MOTION TO DISMISS

■ In order to state a claim for relief under 42 U.S.C. Section 1985(3), plaintiffs must allege the following four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters and Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983) (*Carpenters*); *See also Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

■ The proper pleading of the second of these four elements is at issue here. Two requirements must be met in order to establish the second element of a Section 1985(3) claim: "(1) violation of a protected right, and (2) an invidiously discriminatory class-based animus motivating the violation." *Life Ins. Co. of N. Am. v. Reichardt,* 591 F.2d 499, 502–503 (9th Cir. 1979).

### 1. Violation of a Protected Right.

■ Section 1985(3) itself provides no substantive rights, *Great Am. Fed. Sav & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979); therefore, the rights, privileges, and immunities that the section vindicates must be found elsewhere. *Carpenters,* 463 U.S. at 833, 103 S.Ct. at 3358.

■ Where the substantive right asserted is one enforceable only against the state, a plaintiff must plead and prove that the state is somehow involved in or affected by the conspiracy in order to prevail. *See Carpenters.* In dismissing the Section 1985(3) claim from the original complaint,

this court held that the right asserted by these plaintiffs, that is, the right of privacy and personal choice in matters of procreational freedom, was one enforceable only against governmental interference. In their amended complaint, plaintiffs allege that defendants have deprived them of their constitutional right to travel and have conspired to involve the State of Oregon in denying them their right to privacy.

■ The right to travel interstate is a right guaranteed by the Constitution which can be violated by private actors. Section 1985(3) therefore protects the right to travel from encroachment by private conspiracies. *See Griffin, Carpenters.* In the amended complaint, plaintiffs allege that women travel to the Health Center from other states in the Pacific Northwest, and that an object of defendants' conspiracy is to deprive these women, through harassment and intimidation, of their constitutional right to travel interstate.

■ The facts alleged in this case are analogous to those described by the Court in *Griffin.* In *Griffin,* plaintiffs, black citizens of Kemper County, Mississippi, alleged that they were attacked by defendants, white citizens of the same county, while plaintiffs were passengers in a car owned and operated by one R.G. Grady of Memphis, Tennessee. Plaintiffs alleged that, at the time of the attack, they were traveling upon the federal, state and local highways in and about DeKalb, Kemper County, Mississippi, and that one of the results of the conspiracy was to prevent the petitioners and other black people from exercising their right to travel on the public highways. Kemper County is located on the border of the state of Mississippi and the state of Alabama. Moreover, the conspiracy was apparently motivated by the defendants' erroneous belief that Grady, a Tennesseean, was a civil rights worker. The Court held that:

> Under these allegations it is open to the petitioners to prove at trial that they had been engaging in interstate travel or intended to do so, that their federal right to travel interstate was one of the rights meant to be discriminatorily impaired by

the conspiracy, that the conspirators intended to drive out-of-state civil rights workers from the State, or that they meant to deter the petitioners from associating with such persons. This and other evidence could make it clear that the petitioners had suffered from conduct that Congress may reach under its power to protect the right of interstate travel.

403 U.S. at 106, 91 S.Ct. at 1800–01. Plaintiffs allege that defendants conspired to deter women outside the State of Oregon from traveling to the Health Center to obtain abortions and other health services, and that the constitutional right to travel interstate was therefore infringed by defendants' conspiracy. The court concludes that these allegations are sufficient to state a claim under Section 1985(3).

■ Plaintiffs also allege that defendants have conspired to involve the State of Oregon in depriving them of their right to privacy in matters of procreational freedom. As previously noted, *Carpenters* requires a Section 1985(3) plaintiff asserting a substantive right enforceable only against the state (such as the right to privacy) to allege and prove that the state is somehow involved in or affected by the conspiracy. Plaintiffs' amended right to privacy claim under Section 1985(3) is based upon the court's statement in *Carpenters* that Section 1985(3) is violated where "the aim of the conspiracy is to influence the activity of the State." *Carpenters* 463 U.S. at 830, 103 S.Ct. at 3357. Plaintiffs allege that defendants have agreed and conspired among themselves and with others to harm persons who provide or wish to obtain an abortion. The amended complaint alleges that one of defendants' avowed intentions is to "influence state and local officials to deny such persons constitutional rights." Plaintiffs' Amended Complaint at 5. Plaintiffs' allegations that a purpose of the conspiracy was to influence activity of the State of Oregon are sufficient to state a claim under Section 1985(3) as explained by the Court in *Carpenters.*

## 2. Invidiously Discriminatory Class–Based Animus.

■ Although Section 1985(3) is applicable to private conspiracies, it was not intended by Congress to reach all tortious, conspiratorial interferences with the rights of others:

> The language [of Section 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798 (emphasis in original; footnotes omitted).

The Supreme Court has not elaborated on the question of what classes other than racial classes might be protected by Section 1985(3), although the Court has held that the section does not protect classes defined by *"economic* views, status, or activities." *Carpenters*, 463 U.S. at 837, 103 S.Ct. at 3361.

A class may not be defined simply by the fact that its members are victims of a Section 1985(3) conspiracy, *Lopez v. Arrowhead Ranches*, 523 F.2d 924 (9th Cir.1975), or that its members hold beliefs different from those held by the conspirators. *Roe v. Abortion Abolition Soc.*, 811 F.2d 931 (5th Cir.) *cert. denied,* — U.S. —, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987). In other words, the class must be definable in isolation from the characteristics of the conspirators:

> [T]he intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class. Moreover, the class must exist independently of the defendants' actions; that is, it cannot be defined simply as the group of victims of the tortious action.

*Carpenters*, 463 U.S. at 850, 103 S.Ct. at 3367, (citation omitted); *See also Askew v. Bloemker*, 548 F.2d 673, 678 (7th Cir.1976).

In *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 505 (9th Cir.1979), the court of appeals noted that "[c]ourts construing § 1985(3) have not limited its protection to racial or otherwise suspect classifications[,]" and held that "women purchasers of disability insurance are a sufficient class" for Section 1985(3) protection. *Id.* Later decisions from other panels have interpreted *Reichardt* as standing for the proposition that women are a protected class under Section 1985(3). *See, e.g., DeSantis v. Pacific Tel. & Tel. Co., Inc.*, 608 F.2d 327, 333 (9th Cir.1979). In *DeSantis*, plaintiffs urged the court of appeals to hold that homosexuals as a class were protected by Section 1985(3). The court refused, noting that:

> While § 1985(3) has been liberated from the now anachronistic historical circumstances of reconstruction America, we may not uproot § 1985(3) from the principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights. This underlying principle must continue to determine the coverage of § 1985(3).

*Id., See also Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985) "[W]e require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.".

In this case plaintiffs are a class of women who choose to exercise their constitutional right of privacy by having an abortion. *Cf. Browder v. Tipton*, 630 F.2d 1149 (6th Cir.1980). This is analytically indistinguishable from a class of women who purchase disability insurance. Plaintiffs' amended complaint alleges discrimination against a class of women, albeit a particular class of women. In light of *Reichardt*, this court finds that plaintiffs allege a class of women that may be protected under § 1985(3).

## IDENTIFICATION OF DOE PLAINTIFFS

This court has previously ruled that the identities of the anonymous plaintiffs shall

be disclosed to defendants' counsel pursuant to a protective order limiting their further disclosure. The court adheres to that ruling.

It is hereby ordered that designated defendants' motion to dismiss plaintiffs Section 1985(3) and 1986 claims is denied.

It is hereby ordered that the court's previously-issued protective order regarding disclosure of the identities of the Doe plaintiffs shall remain in effect. It is further ordered that the designated defendants' motion to compel identification of the Doe plaintiffs is denied.